# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CITY OF LEAVENWORTH, KANSAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:25-cv-02169-TC-BGS |
| | ) |
| CORECIVIC, INC., | ) |
| | ) |
| Defendant. | ) |

## REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY INJUNCTION

SPENCER FANE LLP

/s/ David E. Waters
David E. Waters          KS #20773
Caleb P. Phillips        KS #26226
6201 College Boulevard, Suite 500
Overland Park, KS 66211
(913) 345-8100 (telephone)
(913) 345-0736 (fascimile)
dwaters@spencerfane.com
cphillips@spencerfane.com

W. Joseph Hatley         KS #12929
Angus W. Dwyer           KS #26995
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100 (telephone)
(816) 474-3216 (facsimile)
jhatley@spencerfane.com
adwyer@spencerfane.com

ATTORNEYS FOR PLAINTIFF CITY OF
LEAVENWORTH, KANSAS

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2025, I filed this document utilizing this Court's electronic filing system, which will automatically transmit notice of the foregoing to all CM/ECF users.

/s/ W. Joseph Hatley

All the City seeks here is an order requiring CoreCivic to comply with a municipal ordinance, the legality of which CoreCivic does not challenge, but whose application it *does* dispute. In light of a recent controversy at a privately owned ICE detention facility in Newark, NJ which was rooted in whether the owner was required to comply with municipal ordinances, injunctive relief is both desirable and necessary here to clarify the parties' rights and avoid disputes of that nature from boiling over in Leavenworth.[1]

I.  **The City is likely to succeed on the merits.**[2]

    A.  **CoreCivic abandoned its grandfathered special use by not using its property as a detention facility since 2021.**

Although CoreCivic's use of the property as a detention center before 2022 was a conforming use, Kansas law on the abandonment of nonconforming uses is helpful in analyzing whether a *special* use has been abandoned. A "landowner generally has no right 'to change, expand, or to recommence after abandonment' a nonconforming use." *Lambert v. City of Leawood*, 471 P.3d 36, 2020 WL 5491377, at *3 (Kan. Ct. App. Sept. 11, 2020) (quoting *Goodwin v. City of Kansas City*, 244 Kan. 28, 32, 766 P.2d 177, 181 (1988)). "Courts have consistently

---

[1] Because the City seeks only to preserve the status quo through an order of *prohibition*, this motion is not a request for a "disfavored" mandatory injunction. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019). CoreCivic inaccurately defines the status quo as how it *wants* to use its property, not how it has actually been used for the past three years.

[2] CoreCivic's argument that the City has not identified a "cause of action" is incorrect. The City's underlying cause of action is for a threatened violation of its Development Regulations. This is sufficient to satisfy the Declaratory Judgment Act, which authorizes the Court to "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). *See Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 78-88 (D.D.C. 2008) (analyzing and rejecting arguments such as those advanced by CoreCivic). *See also Grace Un. Meth. Ch. v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006) (affirming injunction against operation of day care center that violated city zoning ordinance and declaratory judgment that center violated subdivision's restrictive covenants.) The cases cited by CoreCivic are all distinguishable, either because the court lacked subject matter jurisdiction, had already disposed of the merits of all claims, or was only stating the obvious: that declaratory and injunctive relief are just remedies that must be tethered to the merits of some substantive claim. (Resp's Br. at 4-5.)

ruled that the right to a preexisting nonconforming use is to be strictly construed and that the burden of proof is on the party claiming the nonconforming use." *Seward Cnty. ex rel. Seward Cnty. Bd. of Com'rs v. Navarro*, 35 Kan. App. 2d 744, 752, 133 P.3d 1283, 1288 (2006). Direct testimony of intent to abandon "is not essential." *Chapman v. Cont'l Oil Co.*, 149 Kan. 822, 89 P.2d 833, 834 (1939).

CoreCivic stopped using its property as a detention facility by choosing not to house a single detainee there since 2021. It clearly could have done so given that, in 2023 alone, it housed thousands of ICE detainees at eight other facilities across the United States. *See* CoreCivic PREA Annual Report 2023 at 7, *available at* https://bit.ly/452MSlS. That it continued to "maintain and operate the property" does not mean it was *using* the property *as a detention facility*. (Resp's Br. at 12.) Anyone can build a jail in Leavenworth without first obtaining an SUP, but an SUP would be required before housing detainees in it. It is the actual use of property, not whether its lights are being kept on, that dictates property's status under the City's Development Regulations.

*Union Quarries, Inc. v. Bd. of Cnty. Com'rs of Johnson Cnty.*, 206 Kan. 268, 478 P.2d 181 (1970), and *Vickers v. Franklin Cnty. Bd. of Commissioners*, 444 P.3d 380, 2019 WL 3242274 (Kan. Ct. App. 2019), are both readily distinguishable. In both cases, the owners of rock quarries continued to sell rocks from their property during the alleged period of abandonment. *Vickers*, 2019 WL 3242274 at *8. Here, CoreCivic stopped housing detainees altogether for over three years, and as the Kansas Court of Appeals noted in *Vickers,* a zoning ordinance's specification of the time after which a special use is deemed to be discontinued supplants any subjective questions about the property owner's intent. *Id.* In short, CoreCivic's decision not to house detainees for over three years caused it to lose its grandfathered status and requires it to seek an SUP before housing detainees again.

### B. The City did not violate CoreCivic's due process rights.

CoreCivic claims the City violated § 2.04.D of the Development Regulations and its due process rights because it did not provide CoreCivic with notice and a hearing prior to rescinding its special use designation. But section 2.04.D does not apply here. It applies only to *revocations* of special use permits or active grandfathered special uses. Here, the City administratively *rescinded* the special use designation due to abandonment under a different provision of the Code, § 2.04.C, which does not contain the notice-and-hearing requirements of § 2.04.D. (Doc. 13-2 at 37 § 4.) Once a special use is discontinued for 12 months, the City Commission may rescind the right to carry on the special use without notice or hearing.

Due process also did not require the City to provide notice and a hearing. Property rights may be deemed abandoned without notice and a hearing. *See Nigh v. Haas*, 139 Kan. 307, 31 P.2d 28, 28 syl. ¶ 1 (1934) (holding that due process did not require personal service of notice of forfeiture of mineral rights following abandonment); *Hawley v. Kansas Dept. of Agric.*, 281 Kan. 603, 626, 132 P.3d 870, 886 (2006) (holding that no taking occurs when property is abandoned because the government is not required "to compensate the owner for the consequences of his own neglect.'"); *In re Dahn's Estate*, 204 Kan. 535, 535, 464 P.2d 238, 239 syl. ¶ 6 (1970) (homestead interest extinguished by abandonment); *Casco LLC v. McDonald's Real Estate Co.*, 666 Fed. Appx. 743, 755 (10th Cir. 2016) (easement extinguished by abandonment). CoreCivic was not entitled to notice and a hearing after ceasing its special use for three years because the Development Regulations placed it on notice already that its special use rights could be administratively rescinded at any time thereafter.

### III. A city's inability to enforce a valid ordinance is irreparable harm.

In general, a person's past conduct is the best guide to their future conduct. For this reason, past conduct can appropriately be considered when evaluating whether there is a future risk of

3

harm. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1289 (10th Cir. 2004). CoreCivic does not challenge the City's description of its history on this site or offer any evidence that history will not repeat itself. CoreCivic further does not challenge the City's position that a government's inability to enforce its own laws for the benefit of its own citizens is itself irreparable harm. *Maryland v. King*, 567 U.S. 1301, 1303 (2012). For that reason, the City will suffer irreparable harm if it is unable to enforce its Development Regulations regardless of how CoreCivic plans to operate.

## IV.     The balance of harms favors the City.

CoreCivic's contentions about the harms it will allegedly suffer are supported only by a conclusory declaration. This is insufficient, as a party opposing a preliminary injunction must support its factual arguments with non-conclusory evidence. *See, e.g., Mercy Health Services-Inc. v. Efstratiadis*, 579 F. Supp. 3d 1096, 1115 (N.D. Iowa 2022).

But even taking CoreCivic's assertions at face value, they do not justify the denial of the City's motion. CoreCivic previously recognized that it would need a special use permit and was presumably incurring the same expenses *before* it inexplicably changed course. Moreover, any harms that flow from delay are self-inflicted. If CoreCivic had stuck with its original plan to seek a permit, the process would largely be over by now given the City Commission's plan to make a final decision by May 27, 2025. It is only CoreCivic's decision to proceed unilaterally that has caused the delay of which it now complains. "When the harm to a defendant is self-inflicted, it is outweighed by the irreparable harm to the party seeking injunctive relief." *H.H. Franchising Systems, Inc. v. CareSmart Solutions, Inc.*, Case No. 1:21-cv-575, 2022 WL 4274278, at \*6 (S.D. Ohio Sep. 15, 2022.)

CoreCivic's invocation of its property rights is of no consequence to this motion. Cities have an unquestioned right reasonably to regulate the use of property within their boundaries

through zoning ordinances. To be sure, the Takings Clause does not make that right absolute but that would be another question for another case, not this one.

V.     **The public interest favors a preliminary injunction.**

The City asks only that CoreCivic follow the steps required by the City's Development Regulations before it begins housing detainees again. One of those steps is a public hearing at which the citizens of Leavenworth can voice their concerns one way or the other. If, as CoreCivic claims, opening the Facility will be an economic boon to the City, then this is a policy reason for issuing a permit that should be weighed by the Planning Commission and the City Commission; CoreCivic should make that case through the democratic processes specified in the Development Regulations. An order denying the City's motion would take this decision out of the hands of elected officials and place it with an unelected judge. It is hard to see how the public interest would be furthered by denying the democratic process an opportunity to work.

VI.    **The Court should not require an injunction bond.**

The purpose of an injunction bond is to provide a source to pay for damages caused by a wrongfully issued preliminary injunction. *Universal Engraving, Inc. v. Duarte,* 519 F. Supp. 2d 1140, 1156 (D. Kan. 2007). CoreCivic has requested that the City be required to post an injunction bond that is tied to its claimed monthly gross revenues from the facility. This is plainly inappropriate because it would create the potential for a windfall. According to its most recent 10-K, which the Court can access at https://bit.ly/3YJ5DHb, CoreCivic reported 2024 net income of $63.5 million on revenue of $1.958 billion—a profit margin of only 3.2%.

The City stands by its position that no injunction bond should be required here because of the City's status as a governmental entity. The Court has discretion to waive an injunction bond if the movant has substantial assets. *Id*. The City has available cash reserves of over $5,000,000, sufficient to cover any reasonable damages CoreCivic could claim for a wrongful injunction.